UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

**SHELLY J.,**

                    **Plaintiff,**

**v.**

                                                         **20-CV-204-HKS**

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**

## DECISION AND ORDER

Plaintiff, Shelly J., brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Commissioner of Social Security (the "Commissioner"), which denied her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c). Dkt. No. 23.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 19, 21. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 19) is GRANTED, and Defendant's Motion for Judgment on the Pleadings (Dkt. No. 21) is DENIED.

## BACKGROUND

On January 24, 2017, Plaintiff protectively filed applications for SSI and DIB with the Social Security Administration ("SSA") alleging disability beginning on October 22, 2016, due to injuries sustained in a severe car accident, including a

1

severed artery requiring heart surgery; hip and arm fractures requiring surgery; blood clots; carpal tunnel; an inability to use her right hand; difficulty bending and breathing; and reliance upon a wheelchair.  Tr.[1] 157-165, 192.  On May 2, 2017, Plaintiff's claims were denied, and she requested review.  Tr. 61-84.  On April 25, 2019, Plaintiff appeared with her attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Timothy M. McGuan ("the ALJ").  Tr. 33-60.  On May 15, 2019, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 16-28.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on December 20, 2019. Tr. 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## **LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 16.

marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

II.     **Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment(s) meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment(s) meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's

3

residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

If the claimant is found disabled at any point, the ALJ must also determine whether the disability continues through the date of the decision.  In doing so, the ALJ must determine whether there has been any medical improvement in the claimant's impairment(s), and if so whether the medical improvement is related to the claimant's ability to work.  20 C.F.R. § 404.1594(a).  If the claimant's impairment(s) has not medically improved, the ALJ must then consider whether one or more of the exceptions to medical improvement applies.  *Id.*  In determining whether a claimant's disability

continues, the ALJ must follow the eight-step evaluation process set forth in 20 U.S.C. § 404.1594(f).[2]

       First, the ALJ must assess whether the claimant is engaging in substantial gainful activity. If so, then the disability has concluded. 20 U.S.C. § 404.1594(f)(1). If not, then the ALJ considers whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of Subpart P. *Id.* at (f)(2). If so, then the disability continues. If not, then the ALJ considers whether there has been medical improvement. *Id.* at (f)(3). If there has been medical improvement as shown by a decrease in medical severity, then the ALJ must determine whether it is related to the claimant's ability to do work. *Id.* at (f)(4). Specifically, the ALJ must assess whether there has been an increase in RFC based on the impairment(s) existing at the time of the most recent favorable medical determination. *Id.*

       If medical improvement is not related to the claimant's ability to work, then the ALJ considers whether any of the exceptions to medical improvement applies. *Id.* at (f)(5). If an exception to medical improvement applies or the medical improvement is found to be related to the claimant's ability to do work, then the ALJ will determine whether all of the current impairments in combination are severe. *Id.* at (f)(6). Here, the

---

[2] While the Second Circuit has not directly ruled on this issue, this District, along with other districts in the Second Circuit and other Circuit Courts, have held that the eight-step analysis should be applied in cases involving a closed period of disability. *See e.g., Torres v. Colvin*, 2018 WL 3301437, at *5 (W.D.N.Y. July 5, 2018); *Cook v. Colvin*, 2015 WL 5155720, at *11 (S.D.N.Y. Sept. 2, 2015); *Shepherd v. Apfel*, 184 F.3d 1196, 1200 (10th Cir. 1999) (holding that "applying the medical improvement standard to cases involving a closed period of disability is consistent with the language and legislative purpose in the Reform Act").

ALJ will consider all current impairments and the impact of the combination of those impairments on your ability to function.  *Id.*  When the evidence demonstrates that all current impairments in combination do not significantly limit the claimant's physical or mental abilities to do basic work activities, the impairments will not be considered severe, and the claimant will no longer be considered disabled.  *Id.*  However, if the impairment(s) is severe or the RFC assessment shows significant limitation in the claimant's ability to do basic work activities, then the ALJ will assess the claimant's current ability to perform substantial gainful activity.  *Id.* at (f)(7).  Specifically, the ALJ will assess the claimant's RFC based on all current impairments and consider whether the claimant can still perform past work.  *Id.*  If so, then the ALJ will find the claimant is no longer disabled.  If not, then the ALJ will assess whether the claimant can perform other work in consideration of the RFC, age, education, and past work experience.  20 U.S.C. § 404.1594 (f)(8).

## DISCUSSION

I.     **The ALJ's Decision**

   1. **October 22, 2016-February 28, 2018**

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  First, the ALJ found that Plaintiff meets the insured status requirements of the SSA through December 31, 2021.  Tr. 20.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 22, 2016, Plaintiff's disability date.  *Id.*  At step two, the ALJ found that from October 22, 2016 through February 28, 2018, Plaintiff had the following severe impairments:  status post multiple trauma induced fractures and corresponding soft tissue injuries on the left side

6

of her body, including her right arm and right knee; deep vein thrombosis in her right leg; stress-induced cardiomyopathy; atrial fibrillation; and traumatic contusion of the brain in the right caudate nucleus.  *Id.*  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 20-21.

Next, the ALJ determined Plaintiff retained the RFC to perform sedentary work with additional limitations.  Tr. 21-23.  The ALJ specified Plaintiff could not sit, stand, or walk for more than six hours total in an eight-hour workday.  Tr. 21.  The ALJ also limited Plaintiff to only occasional lifting or carrying of objects up to five pounds and found Plaintiff could occasionally stop, balance, crouch, crawl, kneel, and climb ramps, stairs, ladders, ropes, or scaffolds.  *Id.*  Lastly, the ALJ found Plaintiff could perform simple, unskilled work.  *Id.*

At step five, the ALJ concluded that given Plaintiff's RFC, age, education, and work experience, there were no jobs that existed in the national economy that she could have performed during the period of October 22, 2016 through February 28, 2018.  Tr. 23-24.  Accordingly, the ALJ concluded that Plaintiff was disabled under the Act during this closed period.  Tr. 24.

### 2.  March 1, 2018 – May 15, 2019

The ALJ applied the eight-step evaluation process for determining whether Plaintiff's disability continued throughout the relevant period.  Tr. 24-27.  He found that Plaintiff suffered from the same severe impairments as she did prior to March 1, 2018

and had not developed any new ones.  *Id.*  As he did before, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal any listings impairment.  *Id.*

Next, the ALJ found that as of March 1, 2018, Plaintiff had made "steady positive progress" in recovering from her injuries and, as a result, she now had the RFC to perform sedentary work with fewer limitations. Tr. 24 (referencing exhibit 10F, pp. 2, 60, 85), 25.  She could perform simple, unskilled work, with a sit/stand option after one hour of sitting, occasional fingering with the right dominant hand, no limitations with the left upper extremity, and could perform occasional kneeling, crawling, crouching, and climbing of stairs, ropes, ramps, ladders, or scaffolds.  *Id.*

Next, the ALJ found based on the VE's testimony that given Plaintiff's education, work experience, and improved RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including the jobs of Charge Account Clerk, Order Clerk, and Telephone Solicitor.  Tr. 27.  Accordingly, the ALJ concluded that Plaintiff's disability ended on March 1, 2018.  Tr. 27.

## II.   Analysis

Plaintiff argues the Commissioner's decision should be remanded because the ALJ erred by relying on his own lay interpretation of medical evidence in determining post March 1, 2018 RFC.  Dkt. No. 19 at 10.  This Court agrees.

It is the Commissioner's burden to establish medical improvement. *McDowell v. Colvin*, 2016 WL 2347854, at *3 (D. Vt. May 4, 2016). "Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continue to be disabled." 20 C.F.R. §404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* Accordingly, the ALJ "must compare the current medical severity of the impairment to the medical severity of that impairment at the time of the most recent favorable decision." *Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) (citation omitted) (internal quotation marks omitted). "The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence." *Dereje H. v. Commissioner of Social Security*, 2021 WL722438 at *2 (W.D.N.Y. Feb. 24, 2021).

Here, the ALJ found that Plaintiff had recovered from her injuries "with steady positive progress in activity levels" after March 1, 2018. Tr. 24. The ALJ cited treatment records including: (1) an examination record from a follow-up exam with John J. Bodkin II, M.D. on January 4, 2019 ("Dr. Bodkin") (Exhibit 10F, p. 2, Tr. 629); (2) an examination record from ECMC Cardiovascular Care on June 5, 2017 (Exhibit 10F, p. 60, Tr. 687); and (3) Plaintiff's initial physical therapy examination record from March 29, 2017 (Exhibit 10F, p. 85, Tr. 712).

Dr. Bodkin's examination notes from January 24, 2019, reflect Plaintiff's reported tenderness in the medial lateral and infrapatellar knee areas, especially while sitting on the floor, but also indicated that she retained full motion of her knees. Tr. 630. According to examination notes from ECMC Cardiovascular Care on June 5, 2017, Plaintiff continued to slowly progress in her activity level, presenting without chest pains or pressures. Tr. 687  Plaintiff admitted to fatigue but no lightheadedness or dizziness. *Id.*  The preliminary report for Plaintiff's recent electrocardiogram suggested continued mid LV dysfunction with ejection fraction of 45-50%. *Id.*  Plaintiff was ordered to undergo a stress test to further evaluate her cardiomyopathy. Tr. 688. Lastly, at an initial examination on March 29, 2017, Physical Therapist Matthew Dorsey noted Plaintiff's bilateral knee and wrist pain and right shoulder pain and assessed an eight-week course of physical therapy, two sessions per week. Tr. 715-16.

Ultimately, the ALJ found that Plaintiff's allegations of symptom severity throughout the second period at issue (March 1, 2018 – May 15, 2019) were not supported by the record. Tr. 25. In support of this finding, the ALJ cited to treatment notes reflecting that: Plaintiff's surgical and traumatic wounds were well-healed; she had some stiffness in her right wrist in comparison to the left; her left hip range of motion returned to normal; and she experienced minimal tenderness in the ankle. *Id.* The ALJ also noted that treatment providers had observed improved range of motion in her neck, bilateral knees, and shoulders with intermittent tenderness. *Id.* (citing Exhibit 10F, pp. 2-3, 6, 1022, 27, 35, 42, 51). The ALJ also referenced diagnostic imaging illustrating mild degenerative changes in Plaintiff's lumbar spine in February 2017. *Id.* (citing Exhibit 1F, p.4).

In addition to the medical records, the ALJ referenced Plaintiff's testimony that she exercised regularly and walked five days a week.  Tr. 25.  He also noted Plaintiff's testimony that she could manipulate buttons and zippers; had returned to driving; could sit for one hour at a time; and no longer had difficulty sleeping.  *Id.*  The ALJ further noted Plaintiff's testimony that she wore compression stockings during the summer months to address intermittent leg swelling and elevated her legs for four hours per day.  *Id.*  Lastly, the ALJ observed that although Plaintiff testified that she experienced difficulty rising from the seated position due to her knees giving out, she rose from her seat at the conclusion of the hearing without difficulty.  *Id.*

In discussing the RFC determination for the period following Plaintiff's medical improvement, the ALJ explained that he maintained the sedentary work limitation from the prior RFC determination in accordance with evidence of Plaintiff's increased pain with activity and her weight gain.  Tr. 25.  The ALJ also explained that he accommodated Plaintiff's ongoing knee symptoms with a sit/stand option and occasional kneeling, crawling, crouching, and climbing.  Tr. 25-26.  The ALJ further noted that he continued the simple, unskilled work limitation based on Plaintiff's continued reports of memory difficulties and treatment provider recommendations for neuropsychological testing.  Tr. 26.  Lastly, the ALJ observed that the record did not disclose any left arm, elbow, wrist, and/or hand limitations but he limited Plaintiff to occasional fingering with the right dominant hand in consideration of her ongoing reports of pain and weakness.  *Id.*

However, there is no medical opinion that supports the RFC from this second period.  The only medical opinion in the record is from Samuel Balderman, M.D., who performed a physical consultative examination of Plaintiff on March 8, 2017, during the period where the ALJ found Plaintiff to be disabled.  Tr. 343-47.  At that time, Dr. Balderman found that Plaintiff had "marked limitations" in using her right hand for fine and gross motor work, kneeling, climbing, carrying, and prolonged walking, and instructed that Plaintiff should be reevaluated in 8 months.  Tr. 345.  The ALJ afforded "great weight' to Dr. Balderman's opinion in finding that Plaintiff was disabled between October 22, 2016 and February 28, 2018.  Tr. 22.  However, there is nothing in the record to suggest that Plaintiff was reevaluated.

Despite the fact that there was no medical opinion relating to Plaintiff's functional limitations after February 28, 2018, the ALJ found that her RFC improved after this date.  To compare, for the first period at issue, the ALJ found that Plaintiff but could not sit, stand, or walk for more than six hours total in an eight-hour workday.  Tr. 21.  Among other things, the ALJ limited Plaintiff to only occasional lifting or carrying of objects up to five pounds.  *Id.*  Whereas, for the second period at issue, the ALJ found that Plaintiff only required a sit/stand option after one hour of sitting; was limited to occasional fingering with the right dominant hand; and had no limitations with her left upper extremity.  Tr. 25.  However, there is no medical opinion which supports these very specific limitations.

"Where the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-

related capacities, the [ALJ's] determination of [RFC] without a medical advisor's assessment of those capacities is not supported by substantial evidence." *Bryant v. Commissioner of Social Security*, 2020 WL 5810016, *5 (W.D.N.Y. September 30, 2020) (internal quotations and citations omitted) (finding that ALJ's reliance on treatment notes and a "generally conservative" course of treatment could not constitute substantial evidence in support of his determination that the claimant was no longer disabled; where the record was void of any medical opinion assessing Plaintiff's physical functional abilities.).

"Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for … any competent medical opinion." *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008) (internal quotations and citations omitted).  While in some circumstances, an ALJ may make an RFC determination without a physician's assessment, the RFC assessment will only be sufficient when the record is "clear" and contains "some useful assessment of the claimant's limitations from a medical source."  See *Smith v. Comm'r of Soc. Sec.*, 337 F.Supp. 3d 216, 226 (W.D.N.Y. 2018) (citation omitted).  This Court finds that those circumstances are not present here.

Because the ALJ appears to have substituted his own view of the medical evidence in determining Plaintiff's ability to lift, carry, sit, and stand after February 28, 2018, this Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings.  See *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711, *4 (W.D.N.Y. 2019) (holding that "…[f]or an RFC to be supported by

13

substantial evidence, an ALJ's decision must also be grounded in medical support for the functional limitations used in assigning an RFC to plaintiff[;] [u]nfortunately, there is no medical source support in this record for the assigned RFC"). On remand, the ALJ should order an updated medical examination of Plaintiff, as originally suggested by Dr. Balderman, and re-evaluate Plaintiff's RFC for the period from March 1, 2018 to May 15, 2019.

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 19) is GRANTED. The Commissioner's Motion for Judgment on the Pleadings (Dkt. No. 21) is DENIED. This case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
          September 13, 2021

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**